UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
G.G.,

                 Plaintiff,                               25 cv

   -against-                                     **COMPLAINT**
                                                        *Jury Trial Demanded*

STATE UNIVERSITY OF NEW YORK AND     Case No.: 5:25-CV-0270 (GTS/MJK)
STATE UNIVERSITY OF NEW YORK
at UPSTATE MEDICAL UNIVERSITY and
STATE OF NEW YORK,

                 Defendants.
-------------------------------------------------------X

The Plaintiff, G.G. (hereinafter "Plaintiff"), for her complaint against Defendants, State University of New York ("SUNY") and State University of New York Upstate Medical University ("SUNY Upstate"), and State of New York collectively referred to as the "Defendants" alleges as follows:

## PRELIMINARY STATEMENT

1. This action seeks damages, injunctive relief, attorneys' fees, and other appropriate equitable and legal relief on behalf of Plaintiff as a result of Defendants' violation of her civil rights.

2. This action is brought to remedy discrimination and retaliation on the basis of Disability (Anxiety and Post-Traumatic Stress Disorder, "PTSD") pursuant to the ADA (42 U.S.C. § 12111(8)) and Section 504 of the Rehabilitation Act of 1973.

3. Plaintiff G.G. (hereinafter "Plaintiff") seeks compensatory and punitive damages and other appropriate relief pursuant to the ADA (42 U.S.C. § 12111(8)) and Section 504 of the Rehabilitation Act of 1973.

4.  The Defendants, STATE UNIVERSITY OF NEW YORK, STATE UNIVERSITY OF NEW YORK at UPSTATE MEDICAL UNIVERSITY, and the STATE OF NEW YORK, are legally obligated to uphold anti-discrimination laws by refraining from disability discrimination and prohibiting any form of retaliation against individuals who report or oppose such misconduct.

5.  As hereinafter shown, the Plaintiff, who suffers from anxiety and PTSD, is a member of a protected class and a beneficiary of this non-discrimination mandate. As further shown herein, the Defendants have breached their duty of non-discrimination.

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT TO THIS SUIT

6.  The Court has subject-matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1343(a)(4), 28 U.S.C. § 1331, Section 504 of the Rehabilitation Act of 1973, and the Americans with Disabilities Act, as amended.

7.  The venue lies in the Northern District of New York under 28 U.S.C.§ 1391(b)(1) because this is where all or part of the cause of action accrued and the District where Defendants maintain a residence, an agency, or representative and is physically present.

## THE PARTIES

8.  The Plaintiff was at all times relevant hereto an individual residing in Onondaga County, New York, with training, education, and experience to work as an Addiction Psychiatry Fellow in the SUNY Upstate Addiction Psychiatry Fellowship Program ("Program").

9.  SUNY Upstate was, at all times relevant hereto, a public university in New York State and the employer of the Plaintiff and is part of the State University of New York.

10. In doing the acts and failing and omitting to act, as hereinafter described, Defendants were acting in furtherance of the official policy of SUNY Upstate. At all times mentioned herein, each

2

and every SUNY Upstate defendant was an agent of each and every other SUNY Upstate defendant and had the legal duty to oversee the Plaintiff.

## JURISDICTION AND VENUE

11. The Plaintiff duly filed charges with the EEOC, and this action is commenced within ninety days of receipt of the right-to-sue letter issued on December 3, 2024. Plaintiff has commenced this action pursuant to ADA and 504.

12. The Plaintiff has a disability and perceived disability that impacts major life activities. The Plaintiff had a record of such impairment and was regarded as having such an impairment.

13. All relevant events, unless otherwise stated, occurred at Upstate Medical University and affiliated rotation sites.

14. Venue is proper in the Court under 28 USC § 1391(b) because the Defendants reside in and all incidents, events, and occurrences took place within the United States District Court, Northern District of New York.

## FACTUAL STATEMENT

15. Plaintiff was employed by SUNY Upstate as an Addiction Psychiatry Fellow from July 1, 2022, until her dismissal on December 29, 2023. Plaintiff timely appealed her dismissal, which was upheld on February 16, 2024.

16. On or about February 2022, Dr. Brian Johnson offered Plaintiff a position as an Addiction Psychiatry Fellow to commence the one-year Program starting in July 2022. The pre-employment communications between Plaintiff and Dr. Johnson put Dr. Johnson on notice of Plaintiff's disabilities.

17. Plaintiff again put SUNY on notice of her disabilities through her first request for reasonable accommodations from her supervisor, Dr. Brian Johnson, on July 7, 2022. However,

it was not until December 12, 2022, that SUNY approved a series of accommodations for the Plaintiff. Dr. Brian Johnson specifically told Plaintiff not to contact Graduate Medical Education ("GME")/Human Resources for her accommodations in violation of the SUNY Upstate Resident & Fellow Handbook. Not having accommodations for over five months caused harm to her health and professional reputation. Plaintiff was discriminated against and retaliated against after requesting accommodations.

18. Despite the approval, the SUNY administration failed to consistently implement these accommodations and later, in July 2023, significantly altered the approved accommodations, to Plaintiff's detriment.

19. Specifically, SUNY had initially approved the accommodation to "Avoid impromptu meetings will provide advanced notice (24 hours) for meetings or change in schedule." This accommodation was necessary due to Plaintiff's anxiety, with advanced notice being imperative for her to manage her symptoms of anxiety.

20. Dr. Ajagbe repeatedly expressed his aversion with this approved accommodation, and in July 2023, it was removed by HR without justification, facilitating Dr. Ajagbe's continuous harassment and discrimination against the Plaintiff through a series of impromptu meetings and interactions unrelated to patient treatment or safety.

21. Additionally, removing this accommodation left Plaintiff with essentially no accommodations, as the others that had been approved were merely a recitation of rights already available to all SUNY students.

22. On August 6, 2023, Plaintiff made a complaint of discrimination, disparate treatment, and retaliation to SUNY HR and GME against Dr. Ajagbe.

23. The following day, August 7, 2023, Plaintiff filed a second complaint with SUNY against

Dr. Ray for targeting her disabilities and using her disability symptoms to negatively impact her progress in the Program.

24. Prior to this, Plaintiff filed a number of communications with GME and HR that were not specifically labeled as disability discrimination complaints but were replete with documented instances of such. Plaintiff was simply attempting to obtain the accommodations needed to be able to perform her duties and not cause problems. Dr. Ajagbe was aware of the contents of these communications and made numerous harassing and discriminating comments to Plaintiff about them.

25. On August 14, 2023, Plaintiff filed a third disability discrimination and retaliation complaint with SUNY against Dr. Kevin Johnson, in part, for stating in an evaluation, "It appears her anxiety has become a crutch." Viewing that complaint, it is obvious that Dr. Ajagbe had to feel responsible for the scrutiny facing Dr. Kevin Johnson, which explains Dr. Ajagbe's animosity on August 14th when he learned of the complaint.

26. On this same date, the Plaintiff filed her fourth complaint with SUNY on August 14, 2023, detailing Dr. Ajagbe's continued discriminatory and retaliatory behavior. As described above, this complaint directly led to her retaliatory suspension and termination, which are now being appealed herein.

27. As Plaintiff's suspension and termination were motivated by Dr. Ajagbe's discriminatory and retaliatory animus, each of the complaints should have been considered in their entirety by the Appeal Panel.

28. On August 14, 2023, Dr. Ajagbe informed Plaintiff that adverse action was being taken against her in that she was suspended from all aspects of the Addiction Psychiatry Fellowship Program, effective immediately, due to an investigation of alleged patient safety concerns. Plaintiff

unequivocally denied the allegations made against her.

29.     Specifically, Plaintiff saw the patient whom she believes led to her suspension on Friday, August 4, 2023. She had not seen the patient prior to August 4, 2023, as the patient had been previously seen by Dr. Gilfert. Plaintiff went into work on Saturday, August 12, 2023, and reviewed the patient's previous notes from Dr. Gilfert before writing up her note.

30.     Just hours after this interaction, on August 14, 2023, at 3:14 PM, Plaintiff made her fourth complaint of disability discrimination to Dr. Katz and Ms. Slate, specifically requesting that a formal complaint be filed against Dr. Ajagbe for employment disability discrimination and retaliation. Less than two hours after Dr. Ajagbe learned of Plaintiff's disability discrimination complaint against Dr. Kevin Johnson and forty-six minutes after her complaint against Dr. Ajagbe, Dr. Ajagbe gave Plaintiff a letter informing her that she was suspended and immediately escorted her out of the building.

31.     The temporal proximity between Plaintiff's third and fourth complaints of discrimination and retaliation by Dr. Kevin Johnson and Dr. Ajagbe, and Dr. Ajagbe's issuance of Plaintiff's suspension letter, is sufficient evidence to show that the stated basis for the adverse action was pretextual, and the suspension was motivated by Dr. Ajagbe's retaliatory animus towards Plaintiff. Further, the circumstances surrounding the issuance of the suspension support Plaintiff's position.

32.     Based on the totality of the circumstances set forth above, it is evident that Plaintiff's third and fourth complaints to the SUNY Upstate Medical University regarding her Program Director were the final impetus for Dr. Ajagbe's suspension of her from the Program less than two hours later.

33.     This suspension was the latest in a pattern of discriminatory and retaliatory actions taken against her after she had put SUNY on notice of her disabilities and need for accommodations. In

particular, one week prior, on August 6th, the Plaintiff notified Dr. Katz and HR in a detailed, six-page letter of the hostile work environment and discriminatory and retaliatory animus of Dr. Ajagbe and requested help. She never received any response but does know that Dr. Ajagbe was made aware of the contents of this communication.

34. Plaintiff appealed this decision to suspend her and was given a hearing where her supervisor lied, and her accommodations were used against her as a reason to terminate her as set forth below.

35. Moreover, on August 29, 2023, through counsel, the Plaintiff complained that she was subjected to discrimination and retaliation and that the school was violating the ADA. The first discriminatory and retaliatory procedural error that prevented the Plaintiff from obtaining a fair and impartial suspension hearing was that the Program submitted documents that were not relevant to the reason for her suspension.

36. More significantly, eight of the eleven evaluations were from a time period (July 7 - December 12, 2022) when the Program actively and illegally denied the Plaintiff her requested accommodations, and the other three were from a period when Dr. Ajagbe refused to follow the Plaintiff's accommodations. Although these evaluations had no relevance to the issue to be decided by the Appeal Panel, they were all submitted, and Dr. Ajagbe referred to them several times during the suspension hearing.

37. A second discriminatory and retaliatory procedural error that violated the Plaintiff's procedural and substantive due process rights at the suspension hearing was the failure of the Program to permit the Plaintiff to access her work email to properly prepare for the hearing. This prejudice is especially problematic since Dr. Ajagbe had access to his email, and he knew that the Plaintiff did not.

38. This discriminatory and retaliatory procedural error prejudiced the Plaintiff, prevented her from receiving a fair suspension hearing, and is evidence of SUNY Upstate's systemic discrimination.

39. A third discriminatory and retaliatory procedural error that Dr. Katz permitted at the suspension hearing was the Program's refusal to permit the Plaintiff access to the patient notes to prepare for the hearing. Plaintiff later discovered a confidential email that conclusively proved Dr. Ajagbe's claimed justification for the suspension was pretextual because the patient had never started to take her medication.

40. Had Dr. Katz granted the Plaintiff's request to access patient notes, Plaintiff would have discovered this information prior to the suspension hearing and thereby been able to prove to the Appeal Panel conclusively that Dr. Ajagbe's claimed justification for the suspension was false. (Dr. Ajagbe hid this information from the Appeal Panel.)

41. A fourth discriminatory and retaliatory procedural error that undermined the Plaintiff's right to a fair suspension hearing was the failure of Dr. Katz to provide all of the materials that the Plaintiff submitted to her prior to the suspension hearing for the Appeal Panel to consider. It became apparent that during the suspension hearing, the Appeal Panel did not have some of the materials that the Plaintiff had previously submitted to Dr. Katz for them.

42. Accordingly, the Plaintiff resent the materials to Dr. Katz on September 26th for submission to the Appeal Panel, and Dr. Katz replied, confirming that she had not previously sent them to the Appeal Panel, so Dr. Katz wrote that she would forward them. However, the Appeal Panel's decision letter is dated the day before, September 25th. Dr. Katz knew this.

43. Therefore, it is clear the Appeal Panel made their decision without having been able to consider all of the Plaintiff's previously sent relevant documents. This procedural error prejudiced

the Plaintiff and prevented her from receiving a fair suspension hearing.

44. A fifth discriminatory and retaliatory procedural error was that Dr. Katz improperly excluded the Plaintiff's support person from the hearing. The SUNY Upstate Resident & Fellow Handbook provides, "The resident/fellow and the Program Director may bring one person (Supportive Attendee) with him/her to the meeting with the Appeal Panel members" and is only excluded from "acting as the resident/fellow's attorney."

45. The Plaintiff brought her husband, an attorney and 31-year military veteran, but he was not acting in that capacity. Upon walking into the meeting room, Dr. Katz erroneously told him that he needed to wait in a room down the hall and that he could not be present for the hearing. This violated the SUNY Upstate Resident & Fellow handbook. This procedural error prevented the Plaintiff from fully exercising her rights as provided by SUNY Upstate policies.

46. The sixth discriminatory and retaliatory procedural error was that Dr. Katz posed a subjective rather than objective question to the Appeal Panel about why the Plaintiff was suspended by framing the question in a way that guaranteed their answer would sustain the Plaintiff's suspension.

47. According to the SUNY Upstate Resident and Fellow Handbook, the role of the Appeal Panel is as follows: "The Appeal Panel is charged with determining whether there was a reasonable basis for the Adverse Academic Action taken by the Program Director." However, Dr. Katz posed the question: "whether or not, based upon the information that Dr. Ajagbe had available at the time, was sufficient enough to justify his action at the time?"

48. The Appeal Panel was never asked to identify what patient safety issue merited the Plaintiff's suspension, likely because both Dr. Katz and Dr. Ajagbe knew there was no patient safety issue attributable to the Plaintiff. SUNY Upstate has never answered whether the Plaintiff's

9

suspension was objectively justified.

49. When the Plaintiff questioned Dr. Katz after the suspension hearing about why the Appeal Panel was not tasked with answering the ultimate question (was her suspension justified?), Dr. Katz responded that another independent panel would answer this. This never happened. There is no authority in the SUNY Upstate Resident and Fellow Handbook for Dr. Katz to have another entity answer the propriety of the Plaintiff's suspension. To this day, Dr. Katz has never had this question answered.

50. The seventh discriminatory and retaliatory reason is that SUNY Upstate repeatedly altered the reason given to the Plaintiff for her suspension. On August 14th, Dr. Ajagbe presented the Plaintiff with the following reason for her suspension: "This letter is to inform you that you are suspended from all aspects of the Addiction Psychiatry Fellowship Program at SUNY Upstate Medical University effective immediately. This is due to an investigation of patient safety concerns involving you. You will remain in a paid status as these concerns are investigated."

51. On August 18th, Dr. Katz altered and expanded the reason for the Plaintiff's suspension: "You were placed on suspension because of patient safety concerns resulting from allegations that you instructed a patient to disregard the care plan provided by your supervising attending and to instead follow your directions. Furthermore, there are concerns that when asked about the situation, you were either not truthful in your response, or at the very least not forthcoming with information relative to the situation."

52. On August 30th at 11:24 am, Dr. Katz sent a further refinement of the issue before the Appeal Panel: "In your case, the allegations are that patient safety was compromised by 1) your directions to a patient to disregard instructions previously given by the attending physician, and 2) that when questioned about that conversation, you were not forthright in your response."

53.     In that same email, Dr. Katz also referenced the GME handbook, which the Plaintiff did not have access to, making it impossible for her to properly prepare for the Appeal Panel suspension hearing or any other investigations: "The Appeal Panel will not be considering whether you actually gave those instructions to the patient, but rather whether the allegations that you did met the criteria for suspension contained in the GME handbook." There was no reason for Dr. Katz to change the reason for the Plaintiff's suspension.

54.     Dr. Katz directed the Plaintiff to speak with Dr. Nichita on October 26, 2023, under the premise that Dr. Nichita was the independent entity that would answer the question that the Appeal Panel should have. The Plaintiff met with Dr. Nichita, answered all of her questions, and informed Dr. Nichita of the confidential email that conclusively proved that Dr. Ajagbe created the patient care issue.

55.     Dr. Nichita's final report failed to answer the question that Dr. Katz promised it would and instead concluded, "It is not my place to detect who misconstrued what actually happened, and that would be the task of the appeal panel." Dr. Nichita never mentioned the confidential email in her report and instead, without any authority, invented another reason for the Plaintiff's suspension - violation of the standard of care. This new reason was never previously mentioned by Dr. Ajagbe or Dr. Katz or brought up at the suspension hearing.

56.     More significantly, this new reason ignored information provided by the Plaintiff (that she was not an enrolled Medicaid provider), which was Dr. Ajagbe's fault. The confidential email conclusively proved that the Plaintiff did not do what she was suspended for, but instead of concluding this, Dr. Nichita avoided answering the assigned question. This discriminatory and retaliatory procedural error prejudiced the Plaintiff and prevented her from receiving a fair dismissal hearing, which is further evidence of systemic discrimination.

57. The eighth discriminatory and retaliatory error was that Dr. Katz permitted Dr. Ajagbe to complain about the Plaintiff's accommodations during the suspension hearing. Dr. Ajagbe argued that the suspension of the Plaintiff was proper because the Plaintiff had disabilities and requested accommodations, which revealed his discriminatory and retaliatory animus. Dr. Katz's allowance of this argument is prima facie evidence of SUNY Upstate's systemic discrimination.

58. Additionally, Dr. Ajagbe repeatedly misstated the Plaintiff's accommodations, irreparably tainting the Appeal Panel's decision and swaying it against the Plaintiff. Dr. Ajagbe's misrepresentations made the Plaintiff appear to be a problem for having accommodations even though the Program agreed to them and never asserted that any of the Plaintiff's accommodations caused undue hardship.

59. The arguments offered by Dr. Ajagbe led the Appeal Panel to endorse the Program's decision to suspend the Plaintiff because she has disabilities and requested accommodations. This discriminatory and retaliatory procedural error, allowed by Dr. Katz, prejudiced the Plaintiff and prevented her from receiving a fair suspension hearing and is a violation of SUNY policies and NYS and federal disability regulations and statutes.

60. SUNY Upstate kept the Plaintiff suspended from August 14 through December 29, 2023, without ever answering the question of whether Dr. Ajagbe objectively had a reasonable basis for suspending the Plaintiff.

61. On December 29, 2023, the Program assigned Dr. Ajagbe, the very individual who harassed, discriminated against, retaliated against, and refused to accommodate the Plaintiff, to carry out her termination. Forcing the Plaintiff's harasser to be the one to terminate her exacerbated her emotional distress, resulting in significant emotional and physical health consequences.

62. Plaintiff appealed her termination and was provided a hearing before an Appeal Panel on

February 16, 2024. Dr. Katz once again allowed the first, second, third, and eighth discriminatory and retaliatory errors that tainted the suspension hearing to prejudice the dismissal hearing once again.

63. In particular, Dr. Ajagbe repeatedly argued and misstated Plaintiff's accommodations when attempting to justify the decision to terminate Plaintiff, which clearly showed Dr. Ajagbe's animus and the absence of any nondiscriminatory or nonretaliatory reason for the termination. Plaintiff's termination was affirmed by the Appeal Panel on February 16, 2024.

64. As described above, the discrimination and retaliation that Plaintiff has been subjected to at SUNY violates her rights under the Americans with Disabilities Act.

## FIRST CLAIM FOR RELIEF - DISCRIMINATION UNDER THE ADA

65. Plaintiff realleges the preceding paragraphs as if set forth here.

66. Plaintiff is a qualified individual within the meaning of the ADA. Plaintiff reported her disabilities and requested medical accommodations regarding her disabilities.

67. Defendants discriminated against Plaintiff on the basis of her disabilities and perceived disabilities and by failing to reasonably accommodate Plaintiff as set forth above.

68. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff suffered and will continue to suffer harm, including but not limited to a loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

## SECOND CLAIM FOR RELIEF - 504 OF THE REHABILITATION ACT

69. Plaintiff repeats and realleges each and every preceding paragraph as if fully set forth at length herein.

70. The Defendants violated the Rehabilitation Act, 29 U.S.C. Section 504, et seq. by

discriminating against Plaintiff because of her disabilities and perceived disabilities and by failing to reasonably accommodate Plaintiff.

71. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff suffered and will continue to suffer harm, including but not limited to a loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

### THIRD CLAIM FOR RELIEF - RETALIATION UNDER THE ADA

72. Plaintiff realleges the preceding paragraphs as if set forth here.

73. Defendant intentionally retaliated against Plaintiff after Plaintiff made a formal EEO complaint in violation of the ADA.

74. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and will continue to suffer harm, including but not limited to loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

### FOURTH CLAIM FOR RELIEF - RETALIATION UNDER SECTION 504

75. Plaintiff realleges the preceding paragraphs as if set forth here.

76. Defendant intentionally retaliated against Plaintiff after Plaintiff made a formal EEO complaint in violation of Section 504 of the Rehabilitation Act.

**77.** As a direct and proximate result of Defendant's unlawful conduct, Plaintiff suffered and will continue to suffer harm, including but not limited to loss of employment opportunities, humiliation, embarrassment, reputational harm, emotional, physical, and psychological distress, and other damages.

...

**PLAINTIFF HEREIN DEMANDS A TRIAL BY JURY**

WHEREFORE, the Plaintiff herein, Dr. G. G., demands judgment as follows:

    A.    Judgment for economic losses and compensatory damages in an amount not yet determined by a jury.

    B.    Reasonable attorney's fees.

    C.    Pain and Suffering and emotional damages stemming from this acting.

    D.    Any other relief this Court deems appropriate.

Dated: New York, New York
        March 3, 2025

                Respectfully submitted,

                STEWART LEE KARLIN
                LAW GROUP, P.C.

                *s/ Stewart Lee Karlin*
                Stewart Lee Karlin, Esq.
                *Attorneys for Plaintiff*
                111 John St., 22nd Floor
                New York, NY 10038
                (212) 792-9670
                slk@stewartkarlin.com